**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**ISADORE SAMUEL MOORE**                                                                 **PLAINTIFF**

**V.**                                                                                                     **NO. 4:15-CV-145-DMB-JMV**

**BOLIVAR COUNTY, MISSISSIPPI, and**
**BRENDA COOK**                                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Following his termination as an alcohol and drug counselor at Bolivar County Regional Correctional Facility, Isadore Samuel Moore sued Bolivar County, his former employer, and Brenda Cook, his former supervisor, asserting claims of sex discrimination, sexual harassment, retaliation, and malicious interference with employment. Bolivar County and Cook have each moved for summary judgment. For the reasons below, Bolivar County's summary judgment motion will be granted in part and denied in part; and Cook's summary judgment motion will be denied.

# I
## Standard of Review

"Summary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (internal quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363

(5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Factual Background

### A. James Moore's Tenure as Warden

In January 2012, Kelvin Williams began his first term as Bolivar County Sheriff. Doc. #77-9 at 5. His duties included, among others, overseeing the Bolivar County Regional Correctional Facility ("BCRCF"). *Id.* at 5–6. When he first took over as Bolivar County Sheriff in 2012, Williams hired James Moore to serve as the warden of BCRCF. *Id.* at 6.

In early 2013, Tangi Truelove, a former Director of the Female Alcohol and Drug Rehabilitation Program at BCRCF, sued Bolivar County for racial discrimination. Doc. #82-20 at ¶¶ 3, 5–6. Because James[1] was BCRCF's warden during the relevant time, he was deposed in Truelove's lawsuit. Doc. #82-14. As the Truelove trial date drew near, BCRCF sought to have

---

[1] All persons with the last name Moore will be referenced by their first names to avoid confusion.

James testify on its behalf at trial; however, BCRCF was unable to contact James to prepare for trial—even after Williams tried to contact him personally.[2] Doc. #77-9 at 20–21. Ultimately, the Truelove lawsuit settled around September 22, 2014, before it went to trial.[3] Doc. #77-1 at ¶ 7.

## B. Isadore's Hire at BCRCF

While he was warden, James informed his son Isadore that there were job openings in BCRCF's Alcohol and Drug Department. Doc. #77-2 at 17. After completing the application process, Isadore began working at BCRCF on March 5, 2012, as an alcohol and drug counselor. *Id.* at 9, 17–18, 91.

When Isadore began working at BCRCF, he received initial training from the Director of the Alcohol and Drug Department, Brenda Cook, and the Assistant Director of the Alcohol and Drug Department, Regina Fair. *Id.* at 20; Doc. #77-5 at 7–8. During this training, they reviewed the policies and procedures of the Mississippi Department of Mental Health and proper client file maintenance. Docs. #77-5 at 10, #77-7 at 12–13.

## C. Cook's Sexual Advances

According to Isadore, within the first three months of his hire, Cook began to sexually harass him. Doc. #77-2 at 77. Specifically, Isadore claims that Cook asked him if he was married and if he was "seeing anybody," complimented him on how he looked, invited him to go have drinks with her, sent him a picture of herself to his personal e-mail account, told him that he "look[s] like the type of guy that knows his way around women," and wanted to find out "what kind of guy [he] was." *Id.* at 27, 77–78, 80, 82, 84. As a result, Isadore claims that he suffered

---

[2] James was never subpoenaed to testify at the Truelove trial. Doc. #82-4 at 22.

[3] Although Isadore's amended complaint alleges the Truelove lawsuit settled before trial, nothing in the record reflects that it did. Doc. #37 at ¶ 7. The Court however, takes judicial notice of the "Judgment Dismissing Action by Reason of Settlement" in *Truelove v. Bolivar County, Mississippi*, No. 3:13-cv-00042 (N.D. Miss. Sept. 22, 2014) (Doc. #90). *See* Fed. R. Evid. 201(b), (c); *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407 n.7 (5th Cir. 2004) ("[T]he fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice.").

significant stress which required him to seek counseling and begin taking medication for hypertension. *Id*. at 72.

Isadore "disregarded" all of Cook's comments and contends that shortly after he declined her sexual overtures, Cook began criticizing his work, reprimanding him, writing him up, and requiring him to attend training sessions with her and Fair to improve the quality of his work. *Id*. at 85–86. Isadore was suspended without pay for three days in early 2014 for "consistently disregard[ing] instructions from [his] supervisors and fail[ing] to improve [his] work performance." Doc. #77-4 at 29–30.

### D. Department of Health Audit and Isadore's Termination

On October 2, 2014, the Mississippi Department of Health conducted an audit of BCRCF's Alcohol and Drug Department.[4] Doc. #82-8 at 31. On October 3, 2014, Williams terminated Isadore's employment at BCRCF because of "unsatisfactory work performance and incomplete client files." Doc. #77-6 at 1. BCRCF received the written report containing the findings of the October 2 audit on November 7, 2014.[5] Doc. #77-9 at 17.

### E. BCRCF's Sexual Harassment Policy

During the relevant time, BCRCF maintained a sexual harassment policy that directed employees subject to harassment to report offending activity to their "immediate manager." Doc. #77-3 at 1. Isadore never reported the alleged sexual harassment by Cook to Fair, his immediate manager, but discussed with Williams and Ora Starks, BCRCF's current warden,[6] the "constant

---

[4] The Mississippi Department of Mental Health required proper maintenance of client files in order for BCRCF's Alcohol and Drug Department to maintain its state certification. Doc. #77-4 at 36. Additionally, BCRCF's Alcohol and Drug Department was receiving a grant that required client files to be kept in compliance with the Mississippi Department of Mental Health, or it would risk losing its funding. *Id*. at 43; Doc. #77-11 at 8.

[5] The record reflects only that the Alcohol and Drug Department was "not consistently completing progress notes and … [s]everal records reviewed did not contain periodic staffing notes …." Doc. #82-25 at 7.

[6] James served as warden for "about a year and a half," after which Williams hired Starks as BCRCF's warden. Doc. #77-9 at 6.

hassles" Cook and Fair were giving him. Doc. #77-2 at 24. Nor did Isadore use the term "sexual harassment" in his conversations with Williams and Starks. *Id*. at 29–30. He did, however, report the alleged sexual harassment to Cook's supervisor, Sylvester Hogan, who was the Director of Educational Programs at BCRCF. Doc. #77-8 at 6–7, 14. When Hogan requested that Isadore provide evidence of the sexual harassment, Isadore provided none, so Hogan did not pursue the allegation further. *Id*. at 15.

### III
### Procedural History

In October 2015, Isadore filed a complaint in the United States District Court for the Northern District of Mississippi against Bolivar County, Mississippi, and "the individual Defendant Brenda Cook." Doc. #1 at 1. In his complaint, Isadore asserted a claim under Title VII of the Civil Rights Act of 1964, "the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981," and a single state law claim for "malicious interference with [his] employment." *Id*. at ¶ 3.

On February 24, 2016, Cook filed a motion to dismiss on privilege and immunity grounds under the Mississippi Tort Claims Act ("MTCA"). Doc. #14. On September 29, 2016, the Court denied her motion.[7] Doc. #23.

On November 15, 2016, Isadore, with leave of the Court, filed an amended complaint against Bolivar County and Cook. Doc. #37. The amended complaint asserts "sex discrimination, sex harassment and retaliation" claims against Bolivar County and a claim for malicious interference with employment against Cook. *Id*. at 1. Cook and Bolivar County filed separate answers to the amended complaint. Docs. #39, #48.

---

[7] The Court found Isadore plausibly alleged that Cook acted with malice, precluding the availability of any privilege or immunity to Cook. Doc. #23 at 9–10.

On May 26, 2017, Bolivar County and Cook filed separate motions for summary judgment. Docs. #77, #79. Isadore responded in opposition to each motion and both Bolivar County and Cook replied. Docs. #82, #84, #85, #86.

On October 26, 2017, the Court held a telephonic status conference with the parties to discuss the need for additional briefing on an issue raised by the pending motions for summary judgment and the deadlines for such briefing. Doc. #116; *see* Doc. #118. The parties timely filed supplemental briefs on November 6, 2017. Docs. #121, #122.

# IV
# Analysis

## A. Sexual Harassment Claims

In *Casiano v. AT&T Corp.*, the Fifth Circuit provided a comprehensive guide for analyzing "all supervisor sexual harassment cases under Title VII."[8] 213 F.3d 278, 283 (5th Cir. 2000). First, a court must "determine whether the complaining employee has or has not suffered a 'tangible employment action.'" *Id.* If the employee shows that he suffered a tangible employment action, the "suit is classified as a 'quid pro quo' case." *Id.* If, however, no tangible employment action is shown, the "suit is classified as a 'hostile work environment case.'" *Id.*

Here, Isadore pleads both quid pro quo and hostile work environment theories. The Court will address each theory in turn.

### 1. Quid pro quo sexual harassment

To establish liability under the quid pro quo theory, a plaintiff must show that he suffered a "tangible employment action" as a result of "his acceptance or rejection of his supervisor's alleged sexual harassment." *Casiano*, 213 F.3d at 283. "A tangible employment action constitutes

---

[8] "The elements of claims under Title VII and 42 U.S.C. § 1981 are identical. [Courts] therefore evaluate both claims using the same analysis." *Pratt v. City of Hous., Tex.*, 247 F.3d 601, 606 n.1 (5th Cir. 2001) (internal citation omitted).

a significant change in employment status, such as hiring, firing, … or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Isadore asserts that he suffered "multiple adverse employment actions" as a consequence of rejecting Cook's sexual advances, including Cook becoming hostile and derogatory to him by continuously criticizing his work, receiving repeated verbal and written warnings, being required to attend counseling sessions, receiving a three-day suspension without pay, and being terminated from BCRCF. Doc. #81 at 18–19. Cook's allegedly hostile and critical nature, the repeated warnings Isadore received, and his required attendance at counseling sessions are not tangible employment actions because such actions did not inflict "direct economic harm." *See Thompson v. Naphcare, Inc.*, 117 F. App'x 317, 323 (5th Cir. 2004) ("[W]e have specifically held that increased criticism of an employee's work does not constitute a tangible employment action."). However, Isadore's three-day suspension without pay and termination are tangible employment actions. *See Bustillos v. Miss. Valley State Univ.*, No. 4:12-cv-007, 2013 WL 123730, at *3 (N.D. Miss. Jan. 9, 2013) ("[T]he Court finds that a five-day suspension without pay is a 'tangible employment action' sufficient to support a claim for quid pro quo sexual harassment."); *Prigmore v. Hous. Pizza Ventures, Inc.*, 189 F.Supp.2d 635, 640 (S.D. Tex. 2002) ("Prigmore's termination undoubt[edly] qualifies as a 'tangible employment action.'"). Accordingly, the Court must decide whether there is a genuine issue of material fact as to whether either tangible employment action was a result of Isadore rejecting Cook's sexual advances.

### a. Suspension

Cook testified that she could only recommend a suspension. Doc. #79-2 at 19. Therefore, to show that his suspension was a result of his rejection of Cook's advances, Isadore must necessarily rely on the cat's paw theory of liability.

[The] cat's paw theory of liability [is used] when [a plaintiff] cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action.

*Zamora v. City of Hous.*, 798 F.3d 326, 331 (5th Cir. 2015).[9]  To invoke the cat's paw analysis, Isadore must show that Cook (1) "motivated by a retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of his [termination]." *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017) (alteration in original; internal quotation marks and citation omitted).

Isadore fails to clearly identify who the decisionmaker was with respect to his three-day suspension.  The suspension letter is on BCRCF's letterhead, which includes Williams' name.  Doc. #77-4 at 29.  However, the letter is signed by Cook and copied to Williams and Starks.  *Id.* at 30.  Additionally, there were several people present at the meeting informing Isadore of his suspension, including Hall, Fair, Hogan, and a consultant for BCRCF, Dr. Turner.  Doc. #82-1 at 62-63.  Even assuming Cook recommended the suspension, there is no evidence that such recommendation was a but-for cause of Isadore's suspension.  Accordingly, Isadore may not sustain a quid pro quo claim based on his suspension.

### b.  Termination

Bolivar County argues that Isadore was terminated for a legitimate reason and that the quid pro quo claim must fail because Isadore failed to offer any evidence that Williams—the only person with authority to terminate Isadore—had knowledge of the alleged sexual harassment.  In

---

[9] The "cat's paw" theory is applicable to quid pro quo sexual harassment claims. *Higgins v. Lufkin Indus., Inc.*, 633 F. App'x 229, 232-33 (5th Cir. 2015) (in quid pro quo action, considering, but declining to find liability under cat's paw theory); *Giddens v. Cmty. Educ. Ctrs., Inc.*, 540 F. App'x 381, 387 (5th Cir. 2013) (same).  Indeed, the United States Supreme Court first mentioned the cat's paw theory in *Ellerth*, while analyzing tangible employment decisions giving rise to a quid pro quo claim. *See* 524 U.S. at 762-63 (noting tangible employment decisions may be subject to review by higher level supervisors).

this regard, Bolivar County contends that Isadore's termination was based on work performance alone.[10]

It is undisputed that Williams was the ultimate decisionmaker with respect to Isadore's termination. So, in order to succeed under a cat's paw theory, Isadore must show that Cook used Williams "to bring about [an] intended retaliatory action." *Zamora*, 798 F.3d at 331. The record reflects that shortly after Isadore refused Cook's alleged sexual advances, Cook began criticizing, reprimanding, and disciplining Isadore, leading to his termination. Doc. #77-2 at 85–86. Given the temporal proximity between Isadore's rejection of Cook's alleged advances and her alleged continual retaliatory actions along with testimony that she improperly wrote-up Isadore for cancelling a class,[11] there is sufficient evidence in the record to create a genuine issue of material fact as to whether Cook was motivated by a discriminatory animus that ultimately caused Isadore's termination. *Frensly v. N. Miss. Med. Ctr., Inc.*, 440 F. App'x 383, 387 & n.9 (5th Cir. 2011) (temporal proximity may be evidence of causation for quid pro quo claims).

As to the causation element, Bolivar County asserts that Williams' decision to terminate Isadore was based on Isadore's incomplete client files alone and not "caused or influenced by Ms. Cook." Doc. #78 at 13. But, Cook testified that she "gave [Williams] updates on [Isadore's] work performance periodically, and sometime (sic) maybe weekly." Doc. #77-5 at 27. Additionally, Williams testified that he met with Cook and Fair both together and individually on "several occasions" to discuss Isadore's work performance. Doc. #84-3 at 15. Accordingly, under the cat's paw doctrine, a genuine issue of fact exists regarding whether Cook's meetings with Williams

---

[10] According to James' deposition testimony, James "told [Williams] that my son had told me that he had been sexually harassed by … Cook." Doc. #84-4 at 11. But, evidence of mere knowledge of the alleged sexual harassment does not show animus in Williams' decision to terminate Isadore. *Walch v. Reno*, 129 F.3d 608, 608 (5th Cir. 1997).

[11] Isadore testified that he had to cancel one of his classes to take care of a personal matter and that, because he thought that both Cook and Fair had left BCRCF for the day, he called security to make the announcement that his class would be cancelled instead of notifying Fair or Cook. Doc. #77-2 at 50–54.

were a but-for cause of Isadore's termination. *Pace v. Livingston Par. Sch. Bd.*, 578 F. App'x 369, 375–76 (5th Cir. 2014). Summary judgment on this claim must therefore be denied.

## 2. Hostile work environment sexual harassment

If Isadore fails to show he suffered a tangible employment action, he is left with his hostile work environment sexual harassment claim. In that event, the question becomes, "If proved, would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment?" *Casiano*, 213 F.3d at 284. If the actions constitute severe or pervasive sexual harassment, then "the employer is vicariously liable—*unless* the employer can prove both prongs of the *Ellerth/Faragher* affirmative defense." *Id.*

### a. Severe or pervasive harassment

"[T]here are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a term, condition, or privilege of employment." *EEOC v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (alteration in original, internal quotation marks and citation omitted). Isadore easily establishes the first three elements. First, he is a male, which is a protected class under Title VII. Second, he claims that he was subject to unwelcome sexual harassment. And third, the alleged harassment was based on his status as a male.

As for the fourth element, Bolivar County argues that Isadore "cannot show that he was subject to unwelcome sexual advances or that the alleged harassment affected a term, condition, or privilege of employment that was sufficiently severe or pervasive to alter the condition of his employment and create an abusive working environment." Doc. #78 at 15. Bolivar County characterizes the alleged harassment as "nothing more significant than flirting" and argues that

because Isadore is not currently on medications for stress and has not designated an expert to testify about the alleged harassment, he has failed to show that Cook's alleged harassment rose to the level necessary to be considered a hostile work environment. *Id*.

"To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

> In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Further, the alleged conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999).

Isadore testified in his deposition that he sought medical treatment for hypertension and underwent counseling as a result of Cook's alleged harassment. Doc. #77-2 at 72. Also, Johnda Moore testified that Isadore told her he felt Cook's alleged invitation to connect on a social media platform was "inappropriate." Doc. #82-13 at 23–24. Further, Isadore contends that the criticism, reprimands, and write-ups occurred for over two years. Based on the "totality of the circumstances," particularly the length of time and the consistent manner of the alleged harassment, a reasonable jury could find that Isadore was subject to a hostile work environment. *See EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (ridicule lasting about year

sufficient to establish hostile environment claim).

*b. Ellerth/Faragher defense*

Because there is a genuine issue of material fact with respect to Isadore's hostile work environment claim, the Court must consider Bolivar County's *Ellerth/Faragher* affirmative defense. "Under *Ellerth/Faragher*, a defendant can avert vicarious liability for a hostile work environment claim by showing that (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (2) the harassed employee unreasonably failed to take advantage of any preventive opportunities provided by the employer." *Williams v. Admin. Review Bd.*, 376 F.3d 471, 478 (5th Cir. 2004). "[T]he *Ellerth/Faragher* Court sought a framework that would be workable and would appropriately take into account the legitimate interests of the employers and employees." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2449 (2013).

It is uncontested that BCRCF had a sexual harassment policy during the relevant time which was distributed to all employees and included reporting and investigation procedures. *See* Doc. #77-3. But, "[n]ot every policy eliminates liability; generic policies that offer no specific complaint procedure may be insufficient to satisfy the *Ellerth/Faragher* defense." *Boh Bros. Const. Co., LLC*, 731 F.3d at 463. Isadore does not claim that the policies and procedures outlined in BCRCF's harassment policy are insufficient nor could he with any success. BCRCF's anti-harassment policy included clear procedures for reporting harassment, and it made clear that if an employee felt a previously-reported matter was not investigated fully or if the "harassment originate[d] from [the employee's] manager," the employee should "contact the Personnel Manager immediately." Doc #77-3 at 2. Accordingly, Bolivar County has satisfied the first prong of the *Ellerth/Faragher* defense because it exercised reasonable care to prevent and correct any sexual harassment.

As to the second prong—whether Isadore "unreasonably failed to take advantage of any preventative or corrective opportunities provided by" Bolivar County—BCRCF's anti-harassment policy required "[a]ll employees [to] report incidents of harassment against themselves … to their immediate manager." Doc. #77-3. Isadore, however, did not report the alleged sexual harassment to Fair, his immediate manager. Doc. #77-7 at 32. Nor did he report the alleged harassment to BCRCF's Personnel Manager. While Isadore did talk to Cook's supervisor, Hogan, about a message Cook allegedly sent, Isadore failed to show Hogan the message when requested by Hogan, leaving Hogan to conclude there was "no proof" to pursue the matter further.[12] Doc. #77-8 at 14–15.

Isadore testified that he did not follow BCRCF's harassment reporting procedures because he "didn't want to bring any more harm to [himself] at that point …. And in the other instances where [he] had to file a grievance, it pretty much backfired against [him]." Doc. #77-2 at 28–29. Put simply, Isadore was "trying to keep [his] job." *Id*. at 29.

While understandable, "subjective fears of reprisal do not defeat" the *Ellerth/Faragher* defense. *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 302 (5th Cir. 2005). "For Title VII to be properly facilitated, the reasons for not complaining about harassment should be substantial and based upon objective evidence that some significant retaliation will take place." *Id*. (quoting *Young v. R.R. Morrison and Son Inc.*, 159 F.Supp.2d 921, 927 (N.D. Miss. 2000); *see Ellerth*, 524 U.S. at 745 ("[W]hile proof that an employee failed to fulfill the corresponding

---

[12] Beyond his report to Hogan, Isadore contends he satisfied the second prong of the *Ellerth/Faragher* defense when his father informed Williams of the alleged sexual harassment after his father's deposition in the Truelove lawsuit. Even if Isadore's father did report such harassment to Williams, it would not constitute a reasonable effort *by Isadore* to take advantage of the preventative aspects of BCRCF's policy. The second prong of the defense is "imported from the general theory of damages[] that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998) (internal quotation marks and citation omitted). It cannot be said that failure to properly invoke BCRCF's complaint process for over two years and relying on a conversation between Isadore's father and Williams is reasonable under the circumstances.

obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such a failure will normally suffice to satisfy the employer's burden under the second element of the defense.").

Isadore did not report the alleged sexual harassment as prescribed by BCRCF's harassment policy, and his reporting of an isolated message to Hogan cannot be considered a reasonable effort to "take advantage of any preventative opportunities provided by the employer." *Williams*, 376 F.3d at 478. Accordingly, Bolivar County is entitled to the *Ellerth/Faragher* defense.

## B. Gender Discrimination Claim

To prove a claim of discrimination "[a]bsent direct evidence of discriminatory intent, … proof via circumstantial evidence is assembled using" the *McDonnell Douglas* burden-shifting framework. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Under this framework:

> [T]he plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.

*Outley v. Luke & Assocs. Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (internal quotation marks and citations omitted). A plaintiff may demonstrate a prima facie case of discrimination by "showing that she 1) is a member of a protected class; 2) was qualified for her position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005). BCRCF challenges only the fourth element of Isadore's prima facie case.[13]

---

[13] Isadore asserts that Bolivar County failed to properly present the issue of his gender discrimination claim for

Isadore is a male, a class protected by Title VII. Additionally, the parties do not dispute that Isadore was qualified to perform the role of an alcohol and drug counselor; had they, Isadore can show that he was qualified for the position because he previously applied and interviewed for the position of alcohol and drug counselor, and held it for over two years. *See Cristadoro v. Sally Beauty Supply L.L.C.*, No. 1:11-cv-55, 2012 WL 1715120, at *4 n.7 (N.D. Miss. May 14, 2012) (plaintiff met minimally qualified standard by previously performing position).

For Title VII discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (per curiam) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). "[A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotations marks and citation omitted). Under this standard, Isadore's suspension without pay for three days and his ultimate termination are actionable adverse employment actions. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (two-day suspension without pay is adverse employment action).

To complete his prima facie case, Isadore alleges he was treated less favorably than two female coworkers—another alcohol and drug counselor, Kimberly Spann, and Cook. Isadore argues that even though his files were better maintained than Spann's, she was not suspended or

---

summary judgment. Doc. #81 at 19 ("Bolivar County has not asked for summary judgment on Plaintiff's claim of gender discrimination and has failed to present legal arguments to same, except for briefly mentioning the 'work rule.' As such, it is procedurally barred from doing so now and that claim should go forward to trial."). However, in its summary judgment motion, Bolivar County urged "the Court to grant its Motion for Summary Judgment and dismiss *all* claims against it with prejudice." Doc. #77 at 2 (emphasis added); *see* Doc. #78 at 2 ("The instant case is ripe for summary judgment on *all* claims.") (emphasis added). Moreover, Bolivar County's memorandum brief includes a section that argues that Isadore's female comparator was treated similarly and cites relevant case law supporting its claim that Isadore cannot show gender discrimination if employees who were female were treated similarly. Doc. #78 at 17–18. Accordingly, Isadore's gender discrimination claim is properly before the Court on summary judgment.

terminated.

Notably, Spann received letters—one of which threatened suspension—from Fair regarding substandard client file maintenance that were addressed to both Isadore and Spann. Doc. #77-4 at 40 (September 16, 2013), 39 (October 3, 2013), 38 (October 18, 2013). Furthermore, Spann testified that while at BCRCF, her computer was not working, which made it difficult to maintain files and forced her to occasionally use Isadore's computer to complete her client files until she was given a laptop. Doc. #82-7 at 22–23. Ultimately, Spann voluntarily resigned in August 2014 because she accepted another job offer. Doc. #84-7 at 7.

Because it would be mere speculation to opine on whether Spann would have been fired after the Mississippi Department of Health audit, there is no evidence in the record that would allow a reasonable jury to conclude that Isadore was treated differently than Spann with respect to his termination. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 391 (5th Cir. 2013) ("[M]ere speculation is insufficient to create a fact issue ….").

With respect to his suspension, the record also does not reflect a genuine issue of material fact of disparate treatment between Spann and Isadore. In Fair's September 13, 2013 letter, she told both Spann and Isadore that "whoever does not make the necessary corrections" will be recommended for a three-day suspension. Doc. #77-4 at 40. Bolivar County elicited significant information in discovery about the status of Isadore's client files through its designated expert witness, David Cook, Ed.D. Doc. #77-11 at 4–8. However, Isadore offered no evidence concerning Spann's files aside from his assertion that his files were in better shape than Spann's— merely a conclusory statement that fails to specify how his files compared to Spann's. Doc. #77-2 at 47. Isadore has thus failed to establish that he was treated differently than Spann with respect to his suspension without pay. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir.

1996) ("[A] plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice.").

Isadore also asserts that Cook was treated more favorably than he was. However, Cook was the Director of the Alcohol and Drug Department, not an alcohol and drug counselor like Isadore. Cook, therefore, is an improper comparator for Title VII purposes. *See Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) ("The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." (quotation marks and citation omitted)).[14]

Because Isadore failed to offer evidence showing that he was treated less favorably than a similarly situated person, he cannot demonstrate a prima facie case of gender discrimination, and such a claim must fail.[15]

## C. Retaliation Claims

A plaintiff may prove a claim of "retaliation either by direct or circumstantial evidence." *McCoy*, 492 F.3d at 556. When, as here, a plaintiff lacks direct evidence of discrimination, he "may yet prevail … by providing circumstantial evidence sufficient to raise an inference of discrimination. In such cases, courts apply the *McDonnell Douglas* burden-shifting framework"

---

[14] Although, Cook and Isadore share a common supervisor—the sheriff—and both appear to maintain client files, Cook was "hardly ever in a [class] rotation when [there was] a full staff of counselors," she was in charge of "oversee[ing] and execut[ing]" the grant that BCRCF received, and she oversaw the department in which Moore worked. Doc. #77-5 at 38–39, 58.

[15] Having found that Isadore has failed to satisfy his burden of establishing a prima facie case, the Court declines to address the remaining *McDonnell Douglas* steps. *See Ford v. Madison HMA, Inc.*, 867 F.Supp.2d 843, 848 n.7 (S.D. Miss. 2012) ("The court need not proceed beyond consideration of prima facie case where plaintiff has failed to adduce sufficient evidence to convince the court that her race was a motivating factor in her employer's decision to terminate her.") (collecting cases).

described above. *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (internal citation omitted).

"A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

"'Protected activity' is defined as opposition to any practice rendered unlawful by Title VII, including make a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).

Unlike in the discrimination context, a plaintiff in a retaliation case may satisfy the "adverse employment action" requirement by showing the alleged action is objectively "materially adverse." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Conduct that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination" is sufficient. *Id.* (alteration in original). Such a determination is a fact-specific inquiry. *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016).

Finally, the United States Supreme Court addressed the causation element required to establish a prima facie retaliation claim in *University of Texas Southwest Medical Center v. Nassar*, 133 S.Ct. 2517 (2013). In *Nassar*, the Court held that a plaintiff bringing a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." 133 S.Ct. at 2534. In other words, proof that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action" is

required.  *Porter*, 810 F.3d at 949.

Isadore brings retaliation claims on two different grounds:  first, that he was terminated because he refused Cook's advances; and second, that he was terminated because James, his father, did not assist Bolivar County in preparation for the Truelove lawsuit.

### 1.  Refused sexual advances

Isadore's rejection of Cook's alleged sexual advances and subsequent suspension and termination are protected by Title VII, establishing the first element of Isadore's prima facie case. *See Black v. City and Cty. of Honolulu,* 112 F.Supp.2d 1041, 1049 (D. Haw. 2000) ("refusal of sexual advances is sufficient to constitute protected activity") (collecting cases).  And, while the alleged conduct of writing-up Isadore and continually criticizing his work may not be properly categorized as adverse employment actions, suspending him without pay and terminating him establish the second element of his prima facie case.

With respect to the final element—causation—Isadore has at least created a genuine issue of fact.  Isadore contends that under the "cat's paw" doctrine, Cook influenced Williams' decision to terminate him.  As discussed above, there are genuine issues of fact regarding whether Williams' decision to terminate Isadore was influenced by Cook's alleged animus.  If such facts are proven, but-for causation will be established.  Accordingly, in establishing his prima facie case of retaliation, Isadore has successfully shifted the *McDonnell Douglas* burden to Bolivar County.

Bolivar County offers Isadore's work performance as the legitimate, nondiscriminatory reason for terminating him.  In support of that contention, Bolivar County points to deposition testimony of several BCRCF employees, several examples of correspondence documenting Isadore's incomplete client files, and the expert witness testimony of David Cook that Isadore's work performance constituted adequate grounds for termination.

"Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000). Here, such a question remains. Specifically, because the "cat's paw" doctrine is applicable to retaliation cases, as discussed above, there are factual questions regarding whether Cook was motivated by a discriminatory animus and whether she influenced Williams' decision in terminating Isadore. *See Scarbary v. Ga. Dep't of Nat. Res.*, 245 F.Supp.3d 1328, 1341 (N.D. Ga. 2017) (analyzing cat's paw in pretext phase of *McDonnell Douglas* framework); *Harkness v. Bauhaus U.S.A., Inc.*, 86 F.Supp.3d 544, 558–64 (N.D. Miss. 2015) (same); *Awugah v. Key Bank Nat. Ass'n*, No. 2:12-cv-97, 2013 WL 950694, at *4–5 (D. Me. Mar. 12, 2013) (same).

## 2. James' refusal to assist BCRCF in Truelove lawsuit

In its motion for summary judgment, Bolivar County argues that Isadore failed to establish the first element of his prima facie case with respect to the second ground of his retaliation claim because *he* did not engage in protected activity under Title VII—that his father, James, chose not to participate in BCRCF's trial preparation in an unrelated Title VII case. Isadore, citing *Thompson v. North American Stainless, LP*, 562 U.S. 170, 172 (2011), asserts that Title VII's anti-retaliation provision is to be construed broadly to cover a wide range of employer conduct, including retaliating against employees for the actions of close family members.

In *Zamora v. City of Houston*, the plaintiff brought a retaliation claim under Title VII based on an EEOC charge and lawsuit filed by his father. 798 F.3d 326, 329 (5th Cir. 2015). The district court granted summary judgment for the defendant because under then Fifth Circuit precedent, retaliation claims required the plaintiff to engage in the protected activity. *Id*. at 329–30. Subsequently, the Supreme Court decided *Thompson*, and the Fifth Circuit remanded the

retaliation claim, holding that in the wake of *Thompson*, "a plaintiff could base a retaliation claim on the protected activity of a close family member." *Id*. at 330. Accordingly, Isadore may base his retaliation claim on his father's conduct.

However, that conclusion raises a closer question: whether voluntary refusal to participate in trial preparations for an unrelated Title VII action is a protected activity.[16] "The Fifth Circuit has not ruled as to whether an employee's refusal to assist in defending a Title VII suit is a protected activity. Circuit court decisions do not provide a clear answer." *Udoewa v. Plus4 Credit Union*, 754 F.Supp.2d 850, 881 n.23 (S.D. Tex. 2010). While the Third Circuit has held, in dicta, that an employee's refusal to cooperate with management's investigation of a claim may be a protected activity under Title VII,[17] the Sixth Circuit has held that refusal to participate is not a protected activity because the plain meaning of the ADEA's anti-retaliation provisions only protect actual participation. *Merkel v. Scovill, Inc.*, 787 F.2d 174, 180 (6th Cir. 1986).

In *Merkel*, the Sixth Circuit recognized two exceptions to the general rule that refusing to participate in an investigation is not a protected activity under Title VII. First, when an employer pressures an employee to lie, an employee refusing to cooperate is engaging in a protected activity. *Id*. at 179–80. Second, when an employer pressures an employee to give evidence that the employer does not reasonably believe the employee possesses, and the employee refuses to cooperate, the employee is engaged in protected activity for the purposes of Title VII. *Id*. Some district courts outside the Sixth Circuit have found *Merkel* persuasive. *See, e.g., Scholl v. Ed. Mgmt. Corp.*, No. 2:10-cv-343, 2012 WL 3915662, at *14 (N.D. Ind. Sept. 7, 2012); *Miller v. Empress Casino Joliet Corp.*, No. 09 C 760, 2009 WL 1469730, at * 3 (N.D. Ill. May 27, 2009);

---

[16] This issue, not addressed by the parties in their initial briefing, was the subject of the supplemental briefing requested by the Court.

[17] *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 565 n.2 (3d Cir. 2002).

*Moss v. Lear Corp.*, No. 2:05-cv-238, 2007 WL 2901139, at *9 (N.D. Ind. Sept. 28, 2007); *Harris v. Fulton-DeKalb Hosp. Auth.*, 255 F.Supp.2d 1347, 1358 (N.D. Ga. 2002).

In support of his claim that voluntary refusal to participate in trial preparations is a protected activity, Isadore cites *Smith v. Columbus Metro. Hous. Auth.*, 443 F.Supp. 61 (S.D. Ohio 1977), which held that an employee's refusal to sign an affidavit supporting the employer in a Title VII action was a protected activity. *Smith*, however, involved an employee that was asked to execute an affidavit that she believed to be false and contained facts of which the employee was unsure. 443 F.Supp. at 62. These two facts place the activity in *Smith* within the exceptions carved out by the *Merkel* court.

Upon consideration, the Court is persuaded by the Sixth Circuit's holding in *Merkel* that refusal to cooperate in an employer's investigation of a claim is not a protected activity under Title VII. Because neither of the *Merkel* exceptions are applicable to Isadore's retaliation claim for James' refusal to participate in Bolivar County's trial preparations for the Truelove lawsuit, Isadore has failed to show that his father engaged in a protected activity. As such, Isadore has failed to establish a prima facie case of retaliation based on such activity and summary judgment will be granted in Bolivar County's favor in that regard.

### D. Malicious Interference Claim

Isadore's amended complaint alleges "malicious interference with employment" against the "individual Defendant Brenda Cook."[18] Doc. #37.

### 1. Malicious Interference under Mississippi law

Mississippi law provides a cause of action for "one who maliciously interferes with a valid and enforceable contract"—even in the context of at-will employment. *Levens v. Campbell*, 733

---

[18] This Court has supplemental jurisdiction over Isadore's malicious interference claim pursuant to 28 U.S.C. § 1367.

So.2d 753, 759–60 (Miss. 1999).  To prevail on a tortious interference claim, the plaintiff must

show:

> (1) the acts were intentional and willful;
> (2) that they were calculated to cause damages to the plaintiffs in their lawful
> business;
> (3) that they were done with the unlawful purpose of causing damage and loss,
> without right or justifiable cause on the part of the defendant; and
> (4) that actual loss occurred.

*Id*. at 760–61.  For the purpose of a malicious interference claim, the Mississippi Supreme Court

has defined "malicious" as "the intentional doing of a harmful act without legal or sound

justification or excuse, in other words, the willful violation of a known right."  *Collins v. Collins*,

625 So.2d 786, 790 (Miss. 1993).

## 2.  Mississippi Tort Claims Act

The Mississippi Tort Claims Act ("MTCA") provides the "'state' and its 'political

subdivisions' … immun[ity] from suit at law … on account of any wrongful or tortious act …."

Miss. Code Ann. § 11-46-3.  However, the MTCA waives the general immunity granted for "the

state and its political subdivisions from claims for money damages arising out of the torts of such

governmental entities and the torts of their employees while acting within the course and scope of

their employment …."  *Id*. at § 11-46-5.  There is, however, an exception to the waiver of immunity

provided by the MTCA:  "an employee shall not be considered as acting within the course and

scope of his employment and a governmental entity shall not be liable or be considered to have

waived immunity for any conduct of its employee if the employee's conduct constitute[s] …

malice …."  *Id*.  Further, an "act or omission of an employee within the time and at the place of

his employment" raises a rebuttable presumption that the conduct took place within the scope of

employment.  *Id*.

### 3. Isadore's claim

In her motion for summary judgment, Cook contends that there is no evidence in the record to "indicate that [she] did anything that could be construed as tortious interference with [Isadore's] employment," Doc. #79 at 6;[19] and that there is "no evidence to indicate [Isadore] was dismissed from his job for any reason other than his failure to perform his job," Doc. #80 at 12. Cook points to the expert witness report of Dr. David Cook, which analyzed Isadore's files and concluded that the "nature and frequency of errors in [Isadore's] files justified oral and written write-ups and disciplinary action by his employer." Doc. #86 at 6. Cook also renews her arguments in her motion to dismiss that her actions are not actionable under the MTCA because she was acting within the scope of her employment and that, as a supervisor, she is afforded the "discretionary function" exemption under the MTCA. Doc. #80 at 13.

In response, Isadore enumerates fourteen pieces of evidence that would permit a reasonable jury to find that Cook acted with malice, including deposition testimony that Isadore reported the sexual harassment to Cook's supervisor, Cook began criticizing Isadore's work only after he rejected her sexual advances, all of the Alcohol and Drug Program files that were audited contained deficiencies, and Cook and Fair recommended that Isadore be terminated. Doc. #83 at 18–20.

Both Isadore's malicious interference claim and Cook's asserted privileges and immunity granted under the MTCA turn on the same issue: whether Cook's conduct was undertaken with malice. If Cook acted with malice, Isadore's claim prevails, and Cook is afforded no protection

---

[19] Cook's motion for summary judgment exceeds by at least two pages the page limit for motions allowed by this Court's local rules. *See* L.U. Civ. R. 7(b)(2)(B) ("[A] motion may not exceed four pages, excluding exhibits, may contain only the grounds for the request and may not contain legal argument or citations to case law or other secondary authority."). Because the Court concludes below that Cook's request for summary judgment is unsuccessful on the merits, it has chosen not to exercise its authority to deny the motion for Cook's local rule violation.

under the MTCA.  However, if Cook did not act with malice, Isadore's claim fails and Cook is sheltered by the MTCA.

The record contains evidence that Isadore was criticized for his work, started receiving written reprimands, and was required to attend one-on-one counseling sessions—ultimately resulting in his termination—shortly after he rejected Cook's alleged advances.  There is also evidence in the record shows that Isadore's work was well below par.

In ruling on a motion for summary judgment, "[a] court may not make credibility determinations or weigh the evidence." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (internal quotation marks and citation omitted).  It is for the factfinder at trial to determine whether Cook's conduct was done maliciously or undertaken with the best interests of BCRCF's Alcohol and Drug Department in mind.  Accordingly, Cook's motion for summary judgment is denied.

## V
## Conclusion

Bolivar County's motion for summary judgment [77] is **GRANTED in Part and DENIED in Part**.  Summary judgment is granted on the quid pro quo sexual harassment claim to the extent based on Isadore's suspension, the hostile work environment sexual harassment claim, the gender discrimination claim, and the retaliation claim to the extent based on James' voluntary refusal to participate in trial preparations for the Truelove lawsuit.  Bolivar County's motion for summary judgment is denied in all other respects.

Cook's motion for summary judgment on the malicious interference with employment claim [79] is **DENIED**.

**SO ORDERED**, this 1st day of December, 2017.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**